UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CLAUDETTE MATTHEWS** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 11-667-RLB** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY** | **CONSENT** |

## RULING

Plaintiff, Claudette Matthews ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Both parties have consented to proceed before a United States Magistrate Judge and the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c). For the reasons assigned below, the decision of the Commissioner is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Ruling.

**I.    PROCEDURAL HISTORY**

On September 29, 2009, Plaintiff filed an application for benefits alleging a disability onset date of July 26, 2009. (Tr. 151, 155).[1] The claim was initially denied on January 6, 2010. (Tr. 67). Plaintiff filed a timely request for a hearing that was held on September 21, 2010 at

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

which Plaintiff, represented by counsel, appeared and testified. (Tr. 29-64). A vocational expert (VE), John Yent, also testified at the hearing. (Tr. 49-60).

An unfavorable decision was rendered by the Administrate Law Judge ("ALJ") on October 29, 2010 (Tr. 16-28), finding that Plaintiff was not disabled from the alleged onset date of July 26, 2009 through the date of the decision. Plaintiff's request for review was denied by the Appeals Council on July 29, 2011. (Tr. 5-7). The ALJ's decision rested as the final decision when the Appeals Council denied the claimant's request for review. *See* 20 C.F.R. § 404.981("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.   ALJ'S DETERMINATION

In determining disability, the Commissioner, through the Administrative Law Judge, works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his or her burden at each of the first four steps then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he or she is not currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do

3

basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity since July 26, 2009, the alleged onset date. (Tr. 21).  At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc diseases of the left shoulder, and hypertension. (Tr. 21).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (Tr. 22).  The ALJ specifically considered Listing 1.04A for disorders of the spine. (Tr. 22).  The ALJ determined that Plaintiff has the residual functioning capacity ("RFC") to perform light work except for no overhead reaching and only occasional reaching in all other directions with the left non-dominant upper extremity. (Tr. 22-24). The ALJ further determined that Plaintiff should be allowed occasional postural

changes. (Tr. 22-24). At the fourth step, the ALJ found that Plaintiff is capable of performing her past relevant work as a receiving weigher and that such work does not require the performance of work related activities precluded by Plaintiff's RFC. (Tr. 24). The ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from July 26, 2009 through the date of the decision (Tr. 25).

## IV. PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE

In the present case, Plaintiff alleges that the ALJ was in error on two grounds. (R. Doc. 10 at 8). First, that the ALJ's denial at step three was unsupported by substantial evidence. (R. Doc. 10 at 9). Specifically, Plaintiff suggests that she met her burden of proof at this step insofar as her impairments met or medically equaled the criteria of Listing 1.04A. Second, Plaintiff alleges that the ALJ's assessment of credibility and RFC were unsupported by substantial evidence. (R. Doc. 10 at 12). According to Plaintiff, the ALJ ignored highly relevant objective evidence and made findings which were contradicted by the evidence.

The Commissioner responds that the ALJ performed a proper listings analysis at step three and provided sufficient detail in the decision to support the determination. (R. Doc. 14 at 4). The Commissioner further responds that the ALJ's credibility assessment and RFC determination are supported by substantial evidence. (R. Doc. 14 at 6). The Commissioner suggests that, contrary to Plaintiff's contentions, the ALJ appropriately considered all of the available objective medical evidence in the record. (R. Doc. 14 at 7).

## V. ANALYSIS

A. ALJ's Listing Determination

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant whose impairments meet or equal the criteria of a Listing is disabled and entitled to benefits. For that reason, the criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 529-32.

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Even if a court determines that the ALJ erred by failing to give reasons for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

Here, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (Tr. 22). The ALJ specifically stated that "the requirements of section 1.04A have not been satisfied." (Tr. 22). Listing 1.04A describes disorders of the spine:

6

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

At step three, the ALJ's discussion was limited to a determination that Plaintiff's medical evidence demonstrated a loss of range of motion of the cervical spine with occasional spasms and that Plaintiff has "weakness and occasional sensory loss of her left arm" but that this sensory loss "is more likely attributable to her left shoulder problem." (Tr. 22). The ALJ does not explain the basis for the conclusion that the source of the sensory loss is more likely the result of Plaintiff's left shoulder problem.

A review of the record documents a history of shoulder pain, sensory loss and cervical spine/neck impairment treated over an extended period of time. (Tr. 212, 214, 218, 244, 245, 251, 252). Additionally, Dr. Rathbone diagnosed Plaintiff with cervical radiculitis (Tr. 32, 251). The record also supports the ALJ's conclusion that Plaintiff suffers from degenerative disc disease. The Court has not found, and the Commissioner has not identified, medical evidence identifying the source of Plaintiff's sensory loss. As such, the Court cannot determine that there is substantial evidence to support an attribution of the source of the sensory loss in the shoulder to being "more likely" the result of Plaintiff's shoulder problem as opposed to the back impairment. In summary, the ALJ seemingly finds that this required element of Listing 1.04A is present but that the exhibited sensory loss should instead be attributable to Plaintiff's shoulder problem instead of her degenerative disc disease. While that may be the case, no reason for this

determination is provided. *See Williams v. Astrue*, 355 Fed. Appx. 828, 832 n.6 (5th Cir. 2009) ("ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions").

Even if Plaintiff's sensory loss is attributable to her shoulder, it was still error for the ALJ to not consider it in her Listing determination. Prior to the Listing determination, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the left shoulder, and hypertension. (Tr. 21). Once the ALJ established Plaintiff's "medically severe combination of impairments," the regulations required her to consider the "combined impact of the impairments . . . throughout the disability determination process." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting 20 C.F.R. § 404.1523); *see also Prince v. Barnhart*, 418 F. Supp. 2d 863, 867 (E.D. Tex. 2005) ("Failure to consider combined impact of multiple impairments constitutes a failure to apply correct principles of law."). Because the ALJ inappropriately compartmentalized Plaintiff's impairments, her determination at step three is not only unsupported by substantial evidence, but also legally deficient. *See, e.g., Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) ("The well-settled rule in this Circuit is that . . . the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments." (quotations omitted)); *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974) (remanding case where "the report of the Appeals Council tends to fractionalize the several ailments and to treat each in isolation"); *Prieto v. Astrue*, No. 07-6467, 2008 WL 5068921, at *4 (C.D. Cal. Nov. 25, 2008) ("It does not appear that the ALJ considered whether plaintiff's [obesity, left shoulder, left foot or cervical spine] impairment or combination of impairments met or equaled Listings 1.08, 1.07 or 1.04. . . .

Therefore, the ALJ erred in failing to determine whether plaintiff's impairments, either singly or in combination, met or equaled those Listings.").

Aside from the insufficiently supported finding of sensory loss, the ALJ did find that the required limitation of motion of the spine was demonstrated in Plaintiff's medical evidence. (Tr. 22). The ALJ did not discuss or mention any evidence relating to the other criteria — nerve root compression, neuro-anatomical distribution of pain, motor loss, etc. — required to meet Listing 1.04A. (Tr. 22). The Court is unable to determinate whether the ALJ's silence implies a finding that these elements were or were not met. Therefore, the record as to these criteria is insufficient to allow for meaningful judicial review.

### B.    Harmless Error

Because the ALJ erred by not offering sufficient reasons for finding that Plaintiff did not meet Listing 1.04A, or the reasons that were given were not supported by substantial evidence, the Court must continue to a harmless error analysis. *See Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988). Procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, Plaintiff must establish that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *See Morris*, 864 F.2d at 335.

Plaintiff contends that her severe impairments meet the criteria of Listing 1.04A. To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (1) "nerve root compression characterized by neuro-anatomic distribution of pain," (2) "limitation of motion of the spine," and (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A.

9

The Commissioner responds that the ALJ "extensively" considered Plaintiff's medical records, which indicate that she did not meet Listing 1.04A. (R. Doc. 14 at 4-5). Consequently, the Commissioner reasons that remanding the claim for reconsideration would not alter the ALJ's finding, given that substantial evidence supports the existing decision. However, the Court finds evidence exists that indicates Plaintiff may have met or medically equaled the Listing. Without a sufficient contrary explanation by the ALJ, the error was not harmless and remand is necessary.

The record reveals that Plaintiff suffered nerve root compression with associated neuro-anatomic distribution of pain. On August 23, 2010, a cervical MRI was conducted which found evidence of moderate to severe bilateral neural foramen stenosis with respect to C3-C4 and C4-C5 (Tr. 249). *See Nieves v. Astrue*, No. 12-690, 2013 WL 1192013, at *5 (W.D. Tex. March 21, 2013) (A "severe" rating of stenosis signifies that there is no visible CSF [(cerebrospinal fluid)] around the nerve root and there is at least moderate compression of the nerve root." (citation omitted)). Neural foramen stenosis ranging from mild to moderate was found elsewhere (Tr. 248-49). *See Nieves*, 2013 WL 1192013, at *5 ("A rating of moderate indicates that there may be mild compression of the nerve root" (citation omitted)); *Spratley v. Astrue*, No. 07-1264, 2008 WL 5330563, at *7 (S.D. Miss. Dec. 12, 2008) ("The record is clear that Spratley's spinal disorder was characterized by nerve root compression. Spratley submitted the records . . . which revealed that Spratley suffered from spinal stenosis."). The MRI also revealed flattening of the spinal cord as well as varying degrees of spinal canal stenosis (Tr. 248-249). *See Spratley*, 2008 WL 5330563, at *7 (noting that "flattening of the spinal cord" is evidence of nerve root compression). This MRI was referenced in the ALJ's decision, but the degree of stenosis and the flattening of the spinal cord were not. (Tr. 24).

Furthermore, Plaintiff submitted medical records indicating that her condition is marked by neuro-anatomic distribution of pain, as physicians' notes and Plaintiff's statements represent that she suffered from neck and shoulder pain (Tr. 212, 218, 244, 245, 251, 252). *Spratley*, 2008 WL 5330563, at *7 (cervical spine impairment was "marked by 'neuro-anatomic distribution of pain,' as several physicians noted that Spratley suffered from neck pain that radiated into her shoulders and arms and caused numbness in her upper extremities"); *cf. Aguirre v. Astrue*, No. 07-149, 2008 WL 4238813, at *10 (N.D. Tex. Sept. 16, 2008) (plaintiff's medical records did not indicate neuro-anatomic distribution of pain associated with her cervical spine impairment where plaintiff "was not having any pain radiating distal to her shoulder").

The evidence likewise indicates that Plaintiff suffers from limitation of motion of the spine.  Plaintiff's treating physicians have consistently noted that her condition is marked by limitation of motion of the neck (cervical spine) (Tr. 212, 214, 218, 251). *See Ygnatowiz v. Dir., Office of Workers' Compensation Programs*, 895 F.2d 1419, at *2 (9th Cir. 1990) (unpublished table opinion) ("cervical spine (*i.e.* neck)").  This deficient range of motion was noted by the ALJ at the hearing (Tr. 32) and Dr. Rathbone noted that Plaintiff was "unable to rotate neck" as well as "Decreased ROM neck" (range of motion) (Tr. 251).  Finally, Plaintiff's Physical Residual Functional Capacity Assessment revealed decreased range of motion of her neck (Tr. 232).  The ALJ specifically found that this element had been satisfied. (Tr. 22).

The final criteria of Listing 1.04A requires "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss."  Plaintiff provided objective medical evidence tending to establish that her condition is marked by motor loss accompanied by sensory loss.  Evidence of motor loss includes muscle weakness and a decreased range of motion, among other things. *See, e.g., Pannell v. Astrue*, No. 11-2385, 2012 WL

4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue*, No. 08-411, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"); *Smith v. Astrue*, No. 09-6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011) (discussing "evidence of motor loss, including decreased strength in her left leg and an inability to squat").

Beyond the aforementioned decreased range of motion in the neck, Dr. Rathbone's physical examination likewise reveals weakness in Plaintiff's left upper extremity (Tr. 251) and weakness in her left hand (Tr. 245). Plaintiff also consistently testified that she has difficulty grasping objects and that she suffers numbness in her left hand and pain "shooting" from her left hand (Tr. 38, 40, 46). *See Strong v. Astrue*, No. 10-1406, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss").

The medical evidence further establishes that Plaintiff's muscle weakness is accompanied by a history of decreased range of motion in the head, left shoulder and left upper extremity. (Tr. 205, 212, 214, 218, 232, 251). During clinical examination, Dr. Rathbone noted Plaintiff only had 30% range of motion in her neck. (Tr. 218). Dr. Rathbone also consistently noted that Plaintiff had difficulty rotating her head. (Tr. 212, 214).

Plaintiff's decreased range of motion, along with her diagnoses of tendonosis, impingement, tenderness and muscle spasms of the left shoulder and left upper extremity, is likewise consistent with diagnostic evidence of sensory loss (parasthesia) in the left shoulder and neck (Tr. 205, 214, 221, 240, 251). *See Patton v. Massanari*, 20 Fed. Appx. 788, 792 (10th Cir. 2001) (associating sensory loss and muscle spasms with musculoskeletal impairments); *Williams*

*v. Astrue*, No. 09-130, 2010 WL 989216, at *4 (W.D. La. March 15, 2010) ("parasthesia or sensory loss"); *Morris v. Astrue*, No. 07-547, 2008 WL 4791663, at *2 (N.D. Tex. Oct. 24, 2008) (plaintiff was not disabled at step three where his doctor "reported no issues with sensory loss, reflex changes, muscle spasms, muscle atrophy, or muscle weakness, all of which are objective signs included in Listing 1.04"); *Stephens v. Sullivan*, 792 F. Supp. 566, 570 (S.D. Ohio 1992) (objective evidence of "positive neurological findings" include "muscle spasm or atrophy, sensory loss, or reflex deficits").

After reviewing the medical evidence in the record, the Court finds that Plaintiff has presented evidence which corresponds to the requisite criteria under Listing 1.04A. Therefore, absent a contrary explanation by the ALJ, she appears to have met her burden of demonstrating that she meets or medically equals the criteria of Listing 1.04A.

As a result, the Court finds that Plaintiff's substantial rights were affected by the ALJ's failure to explain the conclusion that Plaintiff seemingly had a combination of impairments that meets or medically equals any of the impairments described in the Listing of Impairments, but fails because one of the requirements is more likely attributable to another injury. Because the Court finds that the ALJ erred at step three, the Court need not address Plaintiff's additional argument.

## VI. CONCLUSION

For the reasons discussed above, the ALJ's decision is **VACATED** and this matter be **REMANDED** for additional proceedings and an explanation regarding the previous finding at step three.

Signed in Baton Rouge, Louisiana, on September 27, 2013.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

13